UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **BEATRIZ FORTY,**<br><br>    **Plaintiff,**<br><br>    v.<br><br>**COMMISSIONER OF SOCIAL SECURITY,**<br><br>    **Defendant.** | Civ. No. 21-06519 (KM)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

    The plaintiff, Beatriz Forty, on behalf of M.G., a minor at the time the application was filed, seeks review pursuant to 42 U.S.C. § 1383(c)(3) and 42 U.S.C. § 405(g) of a final decision by the Commissioner of Social Security ("Commissioner") denying M.G.'s application for child's Supplemental Security Income ("SSI"). For the reasons stated below, the Commissioner's decision is **REVERSED and REMANDED** for proceedings consistent with this opinion.

**I.   BACKGROUND[1]**

    Ms. Forty filed an application for SSI on behalf of her then-adolescent son M.G. on December 20, 2017, alleging disability which began on September 17, 2015. (R. 17.) This application was denied at the initial and reconsideration levels of administrative review, so at Ms. Forty's request ALJ Sharon Allard convened a hearing on February 26, 2020. (R. 17, 27-59.) In a written decision,

---

[1]     Certain citations to the record are abbreviated as follows:

    "DE" refers to the docket entry numbers in this case

    "Compl." refers to Plaintiff's Complaint. (DE 1.)

    "R." refers to the Administrative Record (DE 7) (the cited page numbers correspond to the number found in the bottom right corner of the page for all DE 7 attachments).

    "Pl. Brief" refers to Plaintiff's brief filed on April 13, 2022. (DE 12.)

ALJ Allard found that M.G. did not have an impairment or combination of impairments that meets, medically equals, or functionally equals the severity of an impairment in the Listing of Impairments and thus has not been disabled since his application was filed in December 2017. (R. 18-22.) The Appeals Council denied Ms. Forty's request for a review on January 21, 2021, and this appeal followed. (R. 3–5.)

## II. DECISION FOR REVIEW

### A. The Three-Step Process and this Court's Standard of Review

In the case of an applicant for benefits who is a minor, a three-step evaluation process, rather than the Social Security Administration's usual five-step evaluation process for adults, is employed. 20 C.F.R. §§ 404.1520, 416.924. The plaintiff has the burden of proving disability. 20 C.F.R. § 416.912(a)(1).

At step one, the ALJ determines whether the claimant is currently working and if the work performed constitutes substantial gainful activity. 20 C.F.R. § 416.924(b). If so, then the inquiry ends because the claimant is not disabled.

At step two, the ALJ decides whether the claimant has a severe medically determinable impairment. 20 C.F.R. § 416.924(c). If the claimant does not have a medically determinable impairment, or if the claimant's impairment is only a slight abnormality or combination of slight abnormalities that causes no more than minimal functional limitations, the inquiry ends because the claimant is not disabled. *Id.* Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the claimant's impairment or combination of impairments "meet[s]," "medically equal[s]," or "functionally equal[s]" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 416.924(d). If the claimant has an impairment that meets or equals the requirements of a Listing, and that also meets the duration requirement, the claimant is disabled. 20 C.F.R. § 416.924(d)(1).

An impairment or combination of impairments medically equals a listing "if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.1526(a). When determining whether an impairment medically equals a listing, the ALJ considers all the evidence in a claimant's record about the claimant's impairment and its effects on the claimant that are relevant to a finding of medical equivalence. 20 C.F.R. § 416.926(c).

If "the [claimant's] impairment does not medically meet a listing . . . the examiner must determine whether the impairment functionally equals a listing." *Jaramillo v. Comm'r of Soc. Sec.*, 130 F. App'x 557, 560 (3d Cir. 2005). A court determines whether a claimant's impairment "functionally equals" a Listing by evaluating the following six domains of functioning: "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being." 20 C.F.R. § 416.926a(b)(1). To functionally equal a Listing, the claimant's impairment must result in "marked" limitations in two domains of functioning or result in an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). A "marked" limitation in a domain occurs when the claimant's impairment interferes seriously with the claimant's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i). "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." *Id.* A "marked" limitation is the equivalent of the functioning expected to be found on standardized testing with scores that are at least two, but less than three, standard deviations below the mean. *Id.* An "extreme" limitation in a domain occurs when the claimant's impairment interferes very seriously with the claimant's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3)(i). "Extreme" limitation also means a limitation that is "more than marked" and is the rating given to the worst limitations. *Id.* However, "extreme limitation" does not necessarily mean a total lack or loss of ability to

3

function. *Id.* It is the equivalent of the functioning expected to be found on standardized testing with scores that are at least three standard deviations below the mean. *Id.*

Finally, the ALJ uses a "whole child" approach when determining whether a claimant's impairment is functionally equivalent to a Listing. SSR 09-1p. Under this approach, the ALJ starts the evaluation "by considering the child's functioning without considering the domains or individual impairments." *Id.* After identifying "which of a child's activities are limited," the ALJ then determines "which domains are involved in those activities" and "whether the child's impairment(s) could affect those domains and account for the limitations." *Id.* An impairment "may have effects in more than one domain" and the ALJ must evaluate limitations caused by an impairment "in any affected domain(s)." *Id.* (quoting 20 C.F.R. § 416.926a(c)). Finally, the ALJ "rate[s] the severity of the limitations in each affected domain." *Id.* "This technique for determining functional equivalence accounts for all of the effects of a child's impairments singly and in combination—the interactive and cumulative effects of the impairments—because it starts with a consideration of actual functioning in all settings." *Id.*

This Court's review of legal issues is plenary. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). Factual findings are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations. *See id.* (citing 42 U.S.C. § 405(g)).

### B. The ALJ's Decision

The ALJ applied the three-step framework.

At step one, the ALJ determined that M.G. had not engaged in substantial gainful activity since December 20, 2017, the date of his application for SSI. (R. 18.)

At step two, the ALJ found that M.G. had the severe impairments of glaucoma, cataract, obesity, and inflammatory arthritis. The ALJ concluded, however, that M.G.'s impairment of asthma was "non-severe" and controllable with medication. (R. 18.)

At step three, the ALJ found that M.G. does not have an impairment or combination of impairments that meets or equals the criteria of any of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (R.18.) The ALJ concluded that M.G.'s glaucoma and cataract did not sufficiently impair his vision to meet or equal Listing 102.04, and that M.G.'s inflammatory arthritis did not sufficiently impede his mobility to meet or equal Listing 114.09. (R. 18-19.) Similarly, the ALJ found that M.G.'s impairments did not functionally equal any Listing, determining that of the six domains of functioning, M.G. displayed a marked limitation only as to health and physical well-being. (R. 20.) Otherwise, the ALJ concluded, M.G. exhibited less than a marked limitation in acquiring and using information, attending and completing tasks, and in moving about and manipulating objects, while he showed no limitation in interacting and relating with others and in the ability to care for himself. (R. 19-20.) Accordingly, though the ALJ agreed that M.G.'s impairments would result in difficulties with eyesight and movement, "the allegations concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. 20.) As relevant to the current suit, the ALJ made only one reference to M.G.'s obesity at step three, noting that "[h]e has also been diagnosed with childhood obesity for which his mother received literature on healthy eating." (R. 21.)

## III.   DISCUSSION AND ANALYSIS

I am constrained to review the final decision of the Commissioner, which in this case is the decision of the ALJ, to assess whether it rests on the

application of proper legal standards and whether it is supported by "substantial evidence." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); 42 U.S.C. § 405(g) (the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). On the other hand, an ALJ's legal conclusions are subject to plenary review by this Court. *See Poulos*, 474 F.3d at 91; *Schaudeck*, 181 F.3d at 431. Nonetheless, for a remand to be warranted, an ALJ's legal error must be harmful, i.e., it must have affected the outcome of the case. *See Cosme v. Comm'r Soc. Sec.*, 845 F. App'x 128, 132 (3d Cir. 2021); *Rutherford*, 399 F.3d at 553.

Relying on SSR 19-2p and *Diaz v. Commissioner of Social Security*, 577 F.3d 500 (3d Cir 2009), Plaintiff argues that the ALJ erred in failing to consider M.G.'s obesity in her step three analysis despite having recognized it as a severe impairment at step two. (Pl. Brief at 17-20.) Had the ALJ considered M.G.'s obesity in evaluating his eligibility for SSI as required, Plaintiff contends, the ALJ would have found at step three that M.G. had an "extreme limitation" in health and physical well-being, especially in combination with his inflammatory arthritis and side effects from its treatment, thus entitling him to SSI. (*Id.* at 25-29.)

While obesity has not been a separate listing for decades, SSR 19-2p provides that it can be a medically determinable impairment when it is established by objective medical evidence from an acceptable medical source. SSR 19-2p. Obesity may be classified as a severe impairment "if the person's obesity, alone or in combination with another impairment(s), significantly limits his or her physical or mental ability to do basic work activities." *Id.* Under SSR 19-2p, the ALJ "will not make general assumptions about the severity or functional effects of obesity combined with another impairment(s)." *Id.* However, the ruling also notes that "[o]besity in combination with another impairment(s) may or may not increase the severity or functional limitations of the other impairment" and that the ALJ will "evaluate each case based on the information in the case record." *Id.*

6

In *Diaz,* the Third Circuit held that "an ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step."² 577 F.3d at 504. There, the ALJ acknowledged the claimant's obesity as an impairment at step two, "but failed to consider its impact, in combination with her other impairments, at step three, as required." *Id.* at 503. The Court held that "absent analysis of the cumulative impact of [the claimant's] obesity and other impairments on her functional capabilities," the Court cannot adequately review the ALJ decision. *Id.* at 504. *Diaz* distinguished *Rutherford v. Barnhart,* 399 F.3d 546, 553 (3d Cir. 2005), where remand was not required because the claimant never mentioned obesity as a condition that contributed to her inability to work. *Diaz,* 577 F.3d at 504. *Diaz* does not, however, relieve Plaintiff of the burden of demonstrating that the ALJ's failure to discuss obesity was a harmful error in order to justify remand. *Rutherford,* 399 F.3d at 553; *see also Woodson v. Comm'r Soc. Sec.,* 661 F. App'x 762, 766 (3d Cir. 2016) (holding that the claimant's failure to "affirmatively point[ ] to specific evidence that demonstrates [s]he would succeed at step three" is fatal to an appeal).

With these standards in mind, I agree with Plaintiff that the ALJ committed legal error by failing to consider M.G.'s obesity at step three, that such error was ultimately harmful, and that a remand of Plaintiff's case is thus warranted. As in *Diaz,* the ALJ here found at step two that M.G.'s obesity was a severe impairment and yet the ALJ's analysis at step three lacked any meaningful consideration of how M.G.'s obesity and other impairments cumulatively affected his functional capabilities. As Plaintiff notes, the ALJ's sole reference to M.G.'s obesity indicated that it had been addressed by providing Ms. Forty with "literature on healthy eating" but the ALJ did not

---

² The Third Circuit in *Diaz* based its decision on SSR 00-3P and SSR 02–1p, rulings providing guidance on evaluating cases involving obesity that have since been superseded. *See Diaz,* 577 F.3d at 503-04. SSR 19-2p is the most recent articulation of this guidance and went into effect prior to Plaintiff's hearing before ALJ Allard. *See* SSR 19-2p.

7

discuss how obesity, along with M.G.'s other impairments, might erode M.G.'s functional capabilities.

SSR 19-2p instructs ALJs evaluating cases involving obesity to consider "all work-related physical and mental limitations, whether due to a person's obesity, other impairment(s), or combination of impairments." The ruling notes that obesity is an aggravator, "often associated with musculoskeletal, respiratory, cardiovascular, and endocrine disorders," and thus cautions that the "combined effects of obesity with another impairment(s) may be greater than the effects of each of the impairments considered separately." Indeed, it requires ALJs to consider "all symptoms" with the potential to limit a person's functioning or "ability to do basic work activities," including fatigue and pain. SSR 19-2p also specifically observes that a person with obesity and "arthritis affecting a weight-bearing joint" may have more pain and functional limitations, especially in mobility or ability to manipulate objects, than that person would have due to the arthritis alone.

The record evidence of M.G.'s condition clearly shows the potential for M.G.'s obesity to exacerbate the symptoms of his other impairments in line with SSR 19-2p. M.G. was first diagnosed as obese in September 2017 and as of January 2020, he had a body mass index ("BMI") of approximately 35.1, putting him in the 100th BMI percentile. (R. 375, 415.) M.G. regularly takes multiple medications to treat his glaucoma, arthritis, and asthma. which cause intense fatigue and occasionally dizziness or delirium, allowing him to attend school only three or four days a week. (*See* R. 44, 50, 52, 185, 195.) M.G. claims that as of February 2019, he began experiencing "increased pain, stiffness, and limited mobility from arthritis." (R. 192.) As both SSR 19-2p and common sense reflect, obesity affects or accentuates these kinds of symptoms, potentially deepening M.G.'s fatigue, restricting his mobility, or worsening other functional limitations.

A holistic analysis of how M.G.'s obesity interacts with his other impairments and limitations is simply lacking from the ALJ's opinion. *See Diaz*, 577 F.3d at 504 ("The ALJ must provide a 'discussion of the evidence' and an

'explanation of reasoning' for [her] conclusion sufficient to enable meaningful judicial review."). In assessing the effects of a claimant's obesity, courts consider factors such as a claimant's BMI, his ability to move unassisted and manipulate objects, and the medical treatment the claimant receives for obesity. *See, e.g.*, *Maria D. v. Comm'r of Soc. Sec.*, No. CV 20-11585 (KM), 2022 WL 855652, at *7 (D.N.J. Mar. 23, 2022); *Craig B. v. Comm'r of Soc. Sec.*, No. CV 20-13004 (KM), 2022 WL 557883, at *5-6 (D.N.J. Feb. 23, 2022); *Roman v. Comm'r of Soc. Sec.*, No. CV 19-5756 (KM), 2020 WL 6268673, at *6 (D.N.J. Oct. 26, 2020). Moreover, courts considering a claimant's obesity have, in line with SSR 19-2p and *Diaz*, repeatedly noted how obesity can cause or worsen musculoskeletal, respiratory, or cardiovascular problems. *See, e.g.*, *Marilyn G.D. v. Comm'r of Soc. Sec.*, No. CV 21-00494 (KM), 2022 WL 855684, at *7 (D.N.J. Mar. 22, 2022); *Craig B.*, 2022 WL 557883 at *5-6.

But here, the ALJ's consideration of M.G.'s obesity lacks such a discussion; it does not cite his BMI or any other physical indicator of his obesity, nor does it discuss whether M.G. receives any treatment for obesity, whether obesity worsens his arthritis or asthma, or whether the guidance of SSR 19-2p was even considered. Further, though the ALJ assessed M.G.'s ability to move and manipulate objects, that discussion is confined solely to the impairments arising from M.G.'s inflammatory arthritis with no analysis of M.G.'s obesity. (*See* R. 19, 21.) With nearly no mention of M.G.'s obesity at all, the ALJ's opinion does not evidence the required "analysis of the cumulative impact of [M.G.'s] obesity and other impairments on [his] functional capabilities," leaving me "at a loss in [my] reviewing function." *See Diaz*, 577 F.3d at 505; *cf. Woodson*, 661 F. App'x at 765 (upholding an ALJ's step-three analysis where "the ALJ repeatedly considered the role of [the claimant's] obesity, evaluating it within the context of the overall record, consistent with the appropriate guidelines"); *Cooper v. Comm'r of Soc. Sec.*, 563 F. App'x 904, 911 (3d Cir. 2014) (finding that an ALJ's step-three analysis was sufficient for

9

meaningful review where the ALJ explicitly considered "any additional and cumulative effects of obesity").

    While the question of harmfulness is perhaps closer, I find that Plaintiff has made a sufficiently convincing case, citing specific record evidence, that the ALJ's failure to consider obesity at step three affected the outcome of the case. As noted above, SSR 19-2p specifically states that obesity may exacerbate the pain and functional limitations caused by arthritis. Further, Listing 114.09—the listing for inflammatory arthritis that the ALJ considered and rejected—notes that inflammatory arthritis may cause "constitutional symptoms or signs," including "severe fatigue" and "malaise," symptoms that M.G. already experienced and that obesity could clearly exacerbate. Finally, under a "whole child" approach, any consideration of obesity would clearly have the potential to alter the ALJ's analysis of M.G.'s domains of functioning; obesity only adds to M.G.'s already marked issues with health and physical well-being while the functional limitations and constitutional symptoms associated with obesity would further limit his ability in "moving about and manipulating objects" and "attending and completing tasks." *See* SSR 19-2p (noting that obesity may contribute to a limited range of motion or ability to manipulate objects while obesity-related fatigue "may affect the person's physical and mental ability to sustain work activity"). Thus, a proper analysis of M.G.'s obesity may well reflect an "extreme" limitation in M.G.'s health and physical well-being or "marked" limitation in mobility or attending and completing tasks—either of which would indicate that M.G.'s impairments functionally equaled a Listing. *See* 20 C.F.R. § 416.926a(b)(1).

    I do not find, then, that the omission of obesity from the ALJ's step three analysis is merely a failure to "employ particular 'magic' words," *Diaz*, 577 F.3d at 504, but rather evidences the ALJ's failure to give "careful consideration to obesity when arriving at her bottom-line determination," *Craig B.*, 2022 WL 557883 at *6. Accordingly, Plaintiff has sufficiently shown that the ALJ's ultimate determination of M.G.'s functional limitations would have been altered

10

had the ALJ given meaningful consideration to M.G.'s obesity and thus, the ALJ's failure to do so constituted harmful error.

## IV.   CONCLUSION

Plaintiff is entitled to a remand. On remand, the Commissioner is directed to give meaningful consideration of M.G.'s obesity as directed by SSR 19-2p and *Diaz*. That said, I express no view on the ultimate ruling of whether M.G.'s impairments meet or equal the severity of an impairment in the Listing of Impairments. For the reasons set forth above, the Commissioner's decision is **REVERSED and REMANDED** for further proceedings consistent with this opinion.

A separate order will issue.

Dated: July 28, 2022

/s/ Kevin McNulty

_____

**Hon. Kevin McNulty**
**United States District Judge**